# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| KEVIN BOLLING,<br><br>             Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.; EQUIFAX INFORMATION SERVICES, LLC; TRANS UNION LLC; and ALLY FINANCIAL INC.,<br><br>             Defendants. | **Case No.:**  2:26-cv-10898<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. § 1681, *et seq.*** |

Plaintiff Kevin Bolling ("Plaintiff"), through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* against Defendants Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); Trans Union LLC ("Trans Union") (collectively referenced as the "CRA Defendants"); and Ally Financial Inc. ("Ally" or "Furnisher Defendant") (CRA Defendants and Furnisher Defendant collectively referenced as the "Defendants").

## I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. §

1681p (permitting actions to enforce liability in an appropriate United States District Court).

2.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## II.     PARTIES

3.     Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

4.     Plaintiff is a natural person who resides in Flat Rock, Michigan.

5.     Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

6.     Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626. Experian can be served at its registered agent, C T Corporation System, 208 SO Lasalle St, Suite 814, Chicago, IL 60604-1101.

7.     Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served at its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

8.     Defendant Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). On information and belief, Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C § 1681a(d), to third parties. Trans Union's principal place of business is located at 555 West Adams Street, Chicago, Illinois 60661. Trans Union can be served through its registered agent, Illinois Corporation Service Company, located at 801 Adlai Stevenson Drive, Springfield, Illinois 62703.

9.     Defendant Ally is a "person" as that term is defined by 15 U.S.C. § 1681a(b) and a "furnisher," as that term is used by the FCRA. Ally's principal place of business is located at 500 Woodward Avenue, Detroit, Michigan 48226. Ally can

be served through its registered agent, The Corporation Trust Company, located at Corporation Trust Center 1209 Orange St., Wilmington, Delaware 19801

10.     During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Michigan and conducted business in the State of Michigan on a routine and systematic basis.

11.     During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

12.     Any violations by the Defendants were not in good faith, were knowing, negligent, willful, and/or intentional, and the Defendants did not maintain procedures reasonably adapted to avoid any such violations.

### III.     FACTUAL ALLEGATIONS

13.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

14.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

15. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

16. The FCRA seeks to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

17. The CRA Defendants, comprising the three major consumer reporting agencies (at times referred to collectively as "the CRAs" and individually as a "CRA") in the United States, regularly publish and distribute credit information about Plaintiff and other consumers through the sale of consumer reports.

18. The CRA Defendants each regularly obtains consumer bankruptcy information to include in consumer reports.

19. The CRA Defendants' consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit

Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

20.     The CRA Defendants each obtain consumer information from various sources. Some consumer information is sent directly to the CRA Defendants by furnishers, and other information is independently gathered by the CRA Defendants from third party providers, vendors or repositories, like computerized reporting services such as PACER and Lexis-Nexis.

21.     The CRA Defendants regularly seek out and procure public record information, including consumer bankruptcy filing and discharge information, with the intention of including it on the consumer reports the CRA Defendants sell to third parties such as lenders.

22.     The diligence the CRA Defendants exercise in uncovering and recording consumer bankruptcy filings is not replicated in the CRA Defendants' subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

23.     The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like the CRA Defendants) to make lending decisions.

24.     Those institutions also use FICO Scores and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and dates of delinquencies contained in the CRA Defendants' reports.

25.     The information the CRA Defendants include in a consumer report contributes to a consumer's overall creditworthiness and determines his or her FICO Score(s).

26.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

27.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

     a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many

delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower the consumer's FICO Score will be.

b. The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that the consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact the consumer's credit score.

28. The CRA Defendants are well aware that the effect of a Discharge Order in a Chapter 13 Bankruptcy is to discharge unsecured debts if those debts are listed in the debtor's bankruptcy petition.

29. The CRA Defendants are further aware that the default rule is that all unsecured debts will be listed and discharged in Chapter 13 bankruptcy and that only on rare occasions will an unsecured debt not be discharged upon completion of a Chapter 13 plan.

30. The CRA Defendants are also notified of consumer bankruptcies by furnishers of information and from the information the CRA Defendants independently gather from third parties.

31. The CRA Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about

consumers, including Plaintiff, who have been discharged from Chapter 13 Bankruptcy.

32.    The CRA Defendants routinely report inaccurate, and materially misleading information about consumers like Plaintiff, without verifying or updating the information as required by § 1681e(b), despite possessing information: inconsistent with the reported information and/or possessing information that establishes the reported information is inaccurate.

33.    Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, the CRA Defendants frequently report information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

34.    The CRA Defendants regularly publish consumer information that conflicts with information: provided by data furnishers to the CRA Defendants, already included in the CRA Defendants' credit files, contained in public records that the CRA Defendants regularly access, and/or sourced through the CRA Defendants' independent and voluntary efforts.

35.    Further, the CRA Defendants know the information they report about consumers' bankruptcies is often inconsistent with public records, furnished or reported information, and/or information contained in the CRA Defendants' own files.

36.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the CRA Defendants for their inaccurate consumer reporting following a Chapter 13 discharge.

37.     Thus, the CRA Defendants are on continued notice of their inadequate post-bankruptcy reporting procedures which causes the CRA Defendants to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

<u>*Allegations Specific to the Credit Reporting of Plaintiff*</u>

38.     Plaintiff filed a Chapter 13 Bankruptcy on or about September 17, 2021, in the United States Bankruptcy Court for the Eastern District of Michigan (Case No. 21-47478-mlo).

39.     On or about April 19, 2022, Plaintiff filed his Chapter 13 plan. Plaintiff's Chapter 13 plan specifically excluded Plaintiff's Ally account, opened in January 2019 (Account No. starting with 6739********) (the "Account") from the Chapter 13 bankruptcy, indicating that Plaintiff would continue to maintain the current contractual installment payments and make payments directly to Ally.

40.     Plaintiff complied with all obligations and made all payments during the Chapter 13 Bankruptcy.

41.     Accordingly, Plaintiff received an Order of Discharge on or about August 7, 2025.

42. In or around October 20, 2025, Plaintiff obtained and reviewed copies of his credit reports from the CRA Defendants, to ensure his bankruptcy was being accurately reported.

43. Upon review of his credit reports, Plaintiff observed that each of the CRA Defendants reported inaccurate and/or materially misleading information concerning the Account.

44. Plaintiff's Experian credit report, dated October 27, 2025, reported the Account with a status of "Discharged through Bankruptcy Chapter 13."

45. Plaintiff's Trans Union credit report, dated October 27, 2025, reported the Account with a status of "Account Included in Bankruptcy."

46. Plaintiff's Equifax credit report, dated October 27, 2025, reported the Account with a status of "Included in Wage Earner Plan."

47. The CRA Defendants incorrectly reported the Account as discharged in Plaintiff's Chapter 13 bankruptcy.

48. The Account should not have been inaccurately reported with a bankruptcy discharge status.

49. Additionally, the Account should have been reported with an accurate status such as "Current" that reflect the actual status of the Account, instead of an incorrect bankruptcy status.

*Plaintiff's Disputes to the CRA Defendants*

50. On or about November 24, 2025, Plaintiff mailed a dispute letter to each of the CRA Defendants disputing their reporting of the Account. Plaintiff's dispute informed each of the CRA Defendants that the Account was not discharged in Plaintiff's bankruptcy, and that Plaintiff has continued to make timely payments on the Account.

51. Upon information and belief, the CRA Defendants received Plaintiff's disputes.

52. Upon information and belief, the CRA Defendants each forwarded Plaintiff's dispute to Ally, as required by the FCRA.

53. On or about December 8, 2025, Equifax responded to Plaintiff's dispute and stated "[w]e have verified that this item has been reported correctly."

54. On or about December 8, 2025, Experian responded to Plaintiff's dispute and updated the status as "Petition for Chapter 13 Bankruptcy."

55. On December 11, 2025, Trans Union responded to Plaintiff's dispute and continued to report the Account as "Account Included in Bankruptcy" but updated the remark field to state "Chapter 13 Bankruptcy<; Disp Invg Comp-Consum Disagrs; Closed."

56. CRA Defendants failed to correct their reporting and continued to report the Account as having been included or discharged in Plaintiff's Chapter 13 bankruptcy.

57.     On or about February 5, 2025, Plaintiff obtained another copy of his Equifax credit report, and observed that Equifax continued to report the Account as having been discharged in Plaintiff's Chapter 13 bankruptcy with a status "Included in Wage Earner Plan."

58.     On or about February 5, 2025, Plaintiff obtained another copy of his Experian credit report, and observed that Experian continued to report the Account as having been discharged in Plaintiff's Chapter 13 bankruptcy with a status "Discharged through Bankruptcy Chapter 13."

59.     On or about February 5, 2025, Plaintiff obtained another copy of his Trans Union credit report, and observed that Trans Union continued to report the Account as having been discharged in Plaintiff's Chapter 13 bankruptcy with a status "Account Included in Bankruptcy."

60.     Upon information and belief, Ally received notice of Plaintiff's disputes from each of the CRA Defendants.

61.     Upon information and belief, the Furnisher Defendant failed to reasonably reinvestigate Plaintiff's disputes.

62.     Upon information and belief, the Furnisher Defendant either did not reinvestigate Plaintiff's disputes at all or simply confirmed that what they were already reporting was accurate without reviewing the substance of Plaintiff's disputes.

63.     Despite knowing that the Account was not discharged by Plaintiff's bankruptcy, Ally continued to verify its inaccurate reporting.

64.     The Furnisher Defendant's conduct was willful.

65.     Despite ample reason to doubt any such information provided by Ally, the CRA Defendants continued to erroneously report the Account in Plaintiff's credit file and/or consumer reports.

66.     Upon information and belief, the CRA Defendants failed to reasonably reinvestigate Plaintiff's disputes. Instead, the CRA Defendants mindlessly parroted the inaccurate information provided by Ally without evaluating the substance of Plaintiff's disputes or conducting any reinvestigation at all.

67.     Plaintiff has been extremely frustrated by his inability to correct the inaccurate furnishing of information by the Furnisher Defendant and/or the inaccurate consumer reporting by the CRA Defendants. Plaintiff has expended a substantial amount time and labor to correct this matter, all to no avail.

68.     Upon information and belief, the CRA Defendants continue to report the Account with an inaccurate status.

69.     After Plaintiff's bankruptcy discharge, on or around September 3, 2025, Plaintiff applied for credit with Santander, Nowcom/Westlake Financial, and Michigan Legacy Credit Union, but was denied due to Experian's reporting of the Account.

70.   Additionally, on or around September 3, 2025, Plaintiff applied for credit with Global Lending Services but was denied due to Equifax's reporting of the Account.

71.   Additionally, on or around September 3, 2025, Plaintiff applied for credit with Ally Financial and Toyota Motor Credit, but was denied due to Trans Union's and Experian's reporting of the Account

72.   Additionally, on or around September 3, 2025, Plaintiff applied for credit with Wells Fargo Auto and JPMorgan Chase and was denied due to Trans Union's reporting of the Account.

73.   Additionally, on or around September 7, 2025, Plaintiff applied for credit with SYNCB and was denied due to Trans Union's reporting of the Account.

74.   Additionally, on or around September 8, 2025, Plaintiff applied credit with Capital One and was denied due to Trans Union's and Equifax's reporting of the Account.

75.   Additionally, on January 14, 2026, Plaintiff applied for credit with JPMorgan Chase and was denied due to Trans Union's and Experian's reporting of the Account.

76.   The CRA Defendant's' inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to potential creditors during the process of Plaintiff's credit applications.

77.     As a direct result of the Defendants' conduct, Plaintiff has suffered from decreased creditworthiness due to the inclusion of the Account in Plaintiff's credit file and/or consumer reports.

78.     As a direct result of the Defendants' conduct, Plaintiff wasted his time, postage, and labor by writing and mailing disputes.

79.     Plaintiff also incurred attorney's fees and charges for a necessary review of his credit reports.

80.     As a direct result of the Defendants' conduct, Plaintiff has suffered actual damages, including but not limited to, the above-referenced economic damages, stress, anxiety, mental anguish, sleepless nights, emotional distress, a substantial amount of wasted time, the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting, weight gain, decreased creditworthiness, loss of credit opportunities, dissuasion from seeking credit opportunities, and other damages continuing in nature.

<u>**CLAIMS FOR RELIEF**</u>
**COUNT I**
**CRA Defendants' Violations of 15 U.S.C. § 1681e(b)**

81.     Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

82.     The FCRA requires consumer reporting agencies, like CRA Defendants, to "follow reasonable procedures to assure maximum possible accuracy of the

information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

83. In this case, the Defendant negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of Plaintiff's public record and/or credit information after Plaintiff received a Chapter 13 Discharge Order.

84. CRA Defendants knew or should have known of Plaintiff's bankruptcy case and discharge through public records, independent collections of consumer information directly obtained by Defendant through public records vendors such as Lexis Nexis, the CRA Defendants' own files, and information provided by individual furnishers of account information, yet the CRA Defendants rejected that information.

85. CRA Defendants' unreasonable policies and procedures cause them to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have been discharged from Chapter 13 Bankruptcy.

86. CRA Defendants' unreasonable policies and procedures cause them to regularly report consumer information without verifying its accuracy.

87. CRA Defendants' unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

88. Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records and their own files, including other furnishers that report to CRA Defendants that the consumer's bankruptcy has been discharged.

89. In this case, CRA Defendants inaccurately reported the Account as discharged despite the Plaintiff continuing to make payments on the Account and the Final Accounting Reporting from the Bankruptcy Trustee not showing any disbursements being made to Ally.

90. CRA Defendants' failure to maintain and employ procedures to assure the maximum accuracy of consumers' post-bankruptcy accounts is particularly egregious because CRA Defendants regularly and voluntarily search for consumer bankruptcy information to include in credit files.

91. CRA Defendants knew or should have known they was obligated, by the FCRA, to maintain and employ reasonable procedures to assure they report maximally accurate consumer credit information.

92. CRA Defendants knew or should have known it is obligated, by the FCRA, to update consumer reports and individual tradelines after receiving notice of a Chapter 13 Bankruptcy Discharge.

93.     CRA Defendants knew or should have known that the effect of a Discharge Order in a Chapter 13 Bankruptcy applies only to debts that are specifically listed in the Bankruptcy Trustee's Final Accounting Report.

94.     CRAs' obligations are established by the plain language of the FCRA, promulgated by the Federal Trade Commission, supported by well-established case law, and demonstrated in prior cases involving CRA Defendants.

95.     Therefore, CRA Defendants had ample notice of its obligations under the FCRA and its continued use of reasonable procedures.

96.     If CRA Defendants contend it did not have sufficient notice, CRA Defendants must justify its own failure to review and/or locate the substantial written materials that detail CRAs' duties and obligations under the FCRA, including where consumers file for Chapter 13 Bankruptcy.

97.     CRA Defendants regularly conduct voluntary public records searches with the intention of including bankruptcy information on the consumer reports it sells to other parties for a profit.

98.     When CRA Defendants received notice of Plaintiff's bankruptcy information, they had an obligation to ensure they reported Plaintiff's discharge and its effects with maximal accuracy.

99. Unfortunately, CRA Defendants willfully and consciously breached their duties as CRAs and deprived Plaintiff of his right to a fair and accurate consumer report.

100. Despite knowledge of its legal obligations, CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to ensure maximum possible accuracy of Plaintiff's consumer disclosure/consumer report.

101. CRA Defendants knew or should have known the information they reported about the Account was inaccurate.

102. CRA Defendants violated 15 U.S.C. § 1681e(b) by failing to report accurate information when CRA Defendants knew or should have known the information they reported is inaccurate, and/or otherwise contradicted by information known by CRA Defendants, reported to CRA Defendants, and/or reasonably available to CRA Defendants.

103. CRA Defendants' violations of 15 U.S.C. § 1681e(b) were willful.

104. Alternatively, CRA Defendants violations of 15 U.S.C. § 1681e(b) were negligent.

105. CRA Defendants' inaccurate reporting damages Plaintiff's creditworthiness.

106. Plaintiff suffers actual damages, including the above-referenced economic damages, a decreased credit score, loss of credit opportunities and other financial harm caused by the CRA Defendants' inaccurately reporting.

107. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, loss of sleep, shock, embarrassment, and anxiety.

108. CRA Defendants are each a direct and proximate cause of Plaintiff's damages.

109. CRA Defendants are each a substantial factor in Plaintiff's damages.

110. Therefore, CRA Defendants are each individually liable for actual and statutory damages, punitive damages, and attorneys' fees and costs, as well as other such relief permitted by 15 U.S.C. § 1681, *et seq.*

<u>**COUNT II**</u>
**CRA Defendants' Violations of 15 U.S.C. § 1681i**

111. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

112. Under the FCRA, when a consumer reporting agency receives a dispute from a consumer that indicates an item of information in his or her credit file is inaccurate or incomplete, the consumer reporting agency is required to conduct a

reasonable investigation of the disputed information and forward the dispute to the furnisher within five days of its receipt. 15 U.S.C. § 1681i.

113. If the CRA Defendants are unable to verify the accuracy of the information after conducting a reinvestigation, they must delete the disputed tradelines.

114. The CRA Defendants violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the information they reported about Plaintiff and his accounts was accurate.

115. The CRA Defendants violated 15 U.S.C. § 1681i(a)(1) by failing to correct or delete the inaccurate information reported in Plaintiff's consumer reports.

116. Upon information and belief, the CRA Defendants continued to blindly rely on inaccurate information provided by the Furnisher Defendant despite possessing information that directly conflicted with the information provided by Plaintiff.

117. The CRA Defendants had reason to know that the information furnished by the Furnisher Defendant was inaccurate or otherwise unreliable.

118. Upon information and belief, the CRA Defendants did not undertake any action to ensure that information received from the Furnisher Defendant was accurate or reliable.

119. The CRA Defendants possessed information provided by Plaintiff that directly contradicted the Furnisher Defendant reporting of Plaintiff's Account.

120. Yet despite knowledge of the information's unreliability, the CRA Defendants made no independent effort to verify its accuracy.

121. Upon information and belief, the CRA Defendants violated the FCRA by failing to provide the Furnisher Defendant with all the relevant information regarding Plaintiff, his disputes, and the Account. 15 U.S.C. § 1681i(a)(2)(A).

122. The CRA Defendants violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the information disputed by Plaintiff was inaccurate.

123. The CRA Defendants violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff's credit file upon reinvestigation of Plaintiff's dispute.

124. The CRA Defendants violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly correct the disputed inaccurate information in Plaintiff's credit file upon reinvestigation of Plaintiff's dispute.

125. As a result of the CRA Defendants' violations of § 1681i, Plaintiff has suffered actual damages as detailed herein.

126. Upon information and belief, the CRA Defendants knew or should have known about their obligations under the FCRA. These obligations are well

established in the plain language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

127.   Therefore, the CRA Defendants acted consciously in failing to adhere to their obligations under the FCRA.

128.   The CRA Defendants' violations of § 1681i were willful. Therefore, the CRA Defendants are individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

129.   Alternatively, the CRA Defendants' violations of 15 U.S.C. § 1681i were negligent. Therefore, the CRA Defendants are individually liable to Plaintiff for statutory and actual damages in an amount to be determined a trial. 15 U.S.C. § 1681o.

130.   In any event, the CRA Defendants are liable for Plaintiff's reasonable attorney's fees and costs pursuant to 15 U.S.C §§ 1681n, 1681o.

## COUNT II
### Furnisher Defendant's Violations of 15 U.S.C. § 1681s-2(b)

131.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

132.   At all times pertinent hereto, the Furnisher Defendant was a "person" as that term is defined by 15 U.S.C § 1681a(b) and a "furnisher of information"

providing information about Plaintiff to the three major credit reporting agencies, the CRA Defendants.

133. Furnisher Defendant has a duty to provide accurate information to consumer reporting agencies. 15 U.S.C. § 1681s-2(a).

134. Furnisher Defendant has a duty to promptly correct inaccurate information after receiving notice of a consumer's credit dispute from a consumer reporting agency. 15 U.S.C § 1681s-2(a).

135. Furnisher Defendant failed to follow reasonable procedures to assure it only provided maximally accurate information about Plaintiff's accounts to the consumer reporting agencies.

136. On at least one occasion within the past two years, by example only and without limitation, Furnisher Defendant also violated 15 U.S.C § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

137. Furnisher Defendant has an obligation under 15 U.S.C. § 1681s-2(b) to conduct an investigation after a consumer reporting agency notifies them that a consumer has disputed the accuracy of the information they furnished; review all relevant information during their investigation of the dispute; report the results of the investigation to the relevant consumer reporting agencies; and if the investigation reveals that the furnished information was incomplete or inaccurate, notify every

consumer reporting agency that received the deficient information of the investigation results.

138. If the investigation reveals that the disputed information is incomplete, inaccurate, or unverifiable, it must be modified, deleted, or permanently blocked. 15 U.S.C. § 1681s-2(b)(1)(E).

139. Upon information and belief, the CRA Defendants forwarded Plaintiff's disputes to the Furnisher Defendant in or around December 8, 2025.

140. Each time the Furnisher Defendant was notified of the disputed issues with the Account, it failed to properly investigate Plaintiff's dispute.

141. Upon information and belief, the Furnisher Defendant did not conduct any investigation of disputed accounts, but merely verified the Account for data conformity with its internal records.

142. Furnisher Defendant has been on notice for over 18 years that investigations must be meaningful, searching inquiries. *Johnson v. MBNA Am. Bank*, 357 F.3d 426 (4th Cir. 2004).

143. Upon information and belief, by example only and without limitation, the Furnisher Defendant violated 15 U.S.C. § 1681s-2(b)(1)(E) when it failed to delete and permanently block the Account from being reported to the CRA Defendants.

144. Upon information and belief, by example only and without limitation, the Furnisher Defendant violated 15 U.S.C § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes after being notified of the disputes by the CRA Defendants.

145. Upon information and belief, by example only and without limitation, the Furnisher Defendant failed to review all relevant information while investigating Plaintiff's disputes, in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

146. Upon information and belief, the Furnisher Defendant's actions in the instant matter are representative of their normal policies and procedures.

147. Upon information and belief, the Furnisher Defendant's regular procedures only require them to complete a cursory review of consumer disputes, regardless of the dispute content, magnitude, or frequency.

148. Upon information and belief, the Furnisher Defendant's procedures only require them to respond to disputes with basic consumer information without conducting a reasonable investigation of the disputed information.

149. In sum, the Furnisher Defendant's conduct violated § 1681s-2(b) of the FCRA.

150. Upon information and belief, the Furnisher Defendant knew or should have known about their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgations made by the Federal

Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

151. Therefore, the Furnisher Defendant acted consciously in failing to adhere to their obligations under the FCRA.

152. Furnisher Defendant each willfully and/or negligently violated the foregoing provisions of the FCRA in the following manner:

    a. By willfully and/or negligently failing to conduct an investigation of the inaccurate information that Plaintiff disputed;

    b. By willfully and/or negligently failing to review all relevant information concerning Plaintiff's dispute/s

    c. By willfully and/or negligently failing to report the results of its investigation of the inaccurate information concerning Plaintiff to all credit reporting agencies;

    d. By willfully and/or negligently failing to modify or delete incomplete or inaccurate information in Plaintiff's file after conducting an investigation;

    e. By willfully and/or negligently failing to permanently block the reporting of the inaccurate information disputed by Plaintiff and continuing to report and furnish inaccurate or incomplete information in Plaintiff's file to the credit reporting agencies; and

f. By willfully and/or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C.§ 1681s-2(b).

153. As a result of this conduct, action, and inaction of the Furnisher Defendant, Plaintiff has suffered actual damages, as detailed herein.

154. The Furnisher Defendant's violations of 15 U.S.C. § 1681s-2(b) were willful. Therefore, the Furnisher Defendant is liable to Plaintiff for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

155. Alternatively, the Furnisher Defendant's violations of 15 U.S.C. § 1681s-2(b) were negligent. Therefore, the Furnisher Defendant is liable to Plaintiff for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

156. In any event, the Furnisher Defendant is liable for Plaintiff's reasonable attorney's fees and costs pursuant to 15 U.S.C §§ 1681n, 1681o.

## TRIAL BY JURY

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants for the following:

A. Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

B. Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

C. Punitive damages pursuant to 15 U.S.C. § 1681n;

D. An award of costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

E. All pre-judgment and post-judgment interest as may be allowed under the law; and

F. Any other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED on March 18, 2026

/s/ Adam Hubbi
Adam Hubbi, CA #359827
CONSUMER JUSTICE LAW FIRM PLC
8095 N. 85th Way
Scottsdale, AZ 85258
T: (602) 807-1505
F: (480) 613-7733
E: ahubbi@consumerjustice.com

*Attorneys for Plaintiff*
*Kevin Bolling*